UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| IN RE: ) | |
|     than ) | |
| ) | |
| MILLER AUTOMOTIVE GROUP, INC. ) | Case No. 13-20027-DRD-11 |
| f/k/a MILLER CHRYSLER DODGE JEEP, ) | |
| Debtor ) | |

**MEMORANDUM OPINION**

Two matters are before this Court: 1) the Final Application of Attorneys for Debtor for Fee Allowance and Reimbursement of Costs (the "Fee Application") filed by William L. Needler and Associates, Ltd. (individually, "Needler"), and 2) the Motion for the Examination and Disgorgement of Fees Paid to William L. Needler and for the Imposition of Sanctions (the "Motion") filed by the United States Trustee (the "Trustee"). This is a core proceeding under 28 U.S.C. §157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§1334(b), 157(a) and (b)(1). For the reasons set forth below, the Court denies Needler's request for the allowance of fees and reimbursement of costs, and grants the Trustee's Motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Miller Automotive Group, Inc. (the "Debtor") held the franchise from Chrysler Corporation ("Chrysler") granting it the right to sell and service Chrysler, Dodge, Ram and Jeep vehicles as a factory dealer. The dealership was run by David Miller as general manager, and his wife, Gloria Miller, as office manager. On January 11, 2013, the Debtor filed its voluntary petition under Chapter 11. Days later, the Debtor filed an application to employ Needler as its attorney. Needler reported in his Disclosure of Compensation ("Rule 2016 Disclosure") that he had been paid a pre-petition retainer of $8,000 (the "Retainer"). Over the Trustee's objection, the Court authorized Needler's employment with the caveat that his fees would be carefully scrutinized.

As part of the first day motions, Needler sought the Court's approval to employ Chad Gutschow ("Gutschow"), a broker who had worked with the Debtor pre-petition to sell the dealership's assets. The Trustee objected to the employment, citing "significant connections" between Gutschow and Needler that were undisclosed. Needler subsequently withdrew the application to employ Gutschow.

The Debtor filed a Chapter 11 Plan (the "Plan") shortly after the petition date, but the Court was unable to consider it because it lacked a disclosure statement. The Debtor also filed a motion to use cash collateral (the "Cash Collateral Motion"); the Court denied it without prejudice primarily on the grounds that the financial information on which the Cash Collateral Motion was based was unreliable. Immediately after the decision was handed down, Needler filed an Emergency Motion to Withdraw the Reference to the United States District Court. That motion was denied.

In February, 2013, the two largest creditors of the Debtor filed motions for relief from the automatic stay: Ally Financial Inc. ("Ally) to foreclose its security interest against the Debtor's vehicles and other collateral, and Chrysler Group LLC ("Chrysler") to terminate certain sales and service agreements. Both motions were set for hearing, but in the interim, the Debtor filed its motion to dismiss the case. Ally's motion was subsequently granted and Chrysler's was granted in part.

An Order granting the dismissal motion was entered in April, 2013, and the case was closed. The Trustee sought to reopen the case to seek a determination of the reasonableness of the Debtor's attorney's fees, and the motion to reopen was granted. Needler's fee application along with this Motion followed.[1]

II.   EVALUATION OF COMPENSATION AND DISGORGEMENT

   A.   Reasonableness of Fees

The Bankruptcy Code provides a framework for evaluating the appropriateness of professional fees. Section §329(b) authorizes the court to examine the reasonableness of a debtor's attorney's fees and, if such compensation exceeds the reasonable value of the services rendered, the court may order the return of any payment made, to the extent excessive. This statute allows the court *sua sponte* to regulate

---

[1] Mr. and Mrs. Miller also filed an objection to professional fees on the grounds that Needler "utterly failed to achieve any of the objectives for which the Debtor retained him," communicated abysmally with them, and "continuously undermined the authority of the Court and the U.S. Trustee."

2

attorneys who seem to have charged debtors excessive fees, and is aimed at preventing overreaching by a debtor's attorney. *In re Zepecki*, 258 B.R. 719, 725 (8th Cir. BAP 2001). The decision to reduce fees under §329 is within the sound discretion of the bankruptcy court. *In re Sullivan's Jewelry, Inc.*, 226 B.R. 624, 627 (8th Cir. 1998), *citing In re Coones Ranch*, 7 F.3d 740, 744 (8th Cir. 1993).

Section 330(a) provides that in determining the amount of reasonable compensation, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including whether the professional has demonstrated skill and experience in the bankruptcy field. It provides further that the court shall not allow compensation for services that were not "reasonably likely to benefit the debtor's estate…." 11 U.S.C. §330(a)(4)(A)(ii)(I). The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested. *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997). This burden is not to be taken lightly given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors. *In re Ulrich,* 2014 WL 4385691 (Bankr. E.D. Mich. Sept. 5, 2014)(citations omitted).

A bankruptcy court does not determine the reasonableness of an attorney's requested compensation through hindsight. The Bankruptcy Code requires only that the services in question had the reasonable likelihood of benefiting the estate at the time they were provided, not that they actually did provide a benefit. *In re Blue Stone Real Estate*, 487 B.R. 573, 577 (Bankr. M.D. Fla. 2013). The court must make this determination in an objective manner, making sufficient factual findings, on the record, on which to base its decision. *In re Ahead Communications Systems, Inc.*, 395 B.R. 512, 517 (D. Conn. 2008).

The fact that the Chapter 11 plan was ultimately not confirmed does not, by itself, bar recovery of compensation for services performed in the reorganization case. *In re American Metallurgical Products Co., Inc.*, 228 B.R. 146, 159 (Bankr. W.D. Pa. 1998). The court in *In re Jefsaba, Inc.,* 172 B.R. 786, 799 (Bankr. W.D. Pa. 1994), explained the standard this way:

> [W]e do not conclude that only successful actions may be compensated under §330. To the contrary, so long as there was a reasonable chance of success which outweighed the cost in pursuing the action, the fees

3

> relating thereto are compensable. Moreover, professionals must often perform significant work in making the determination whether a particular course of action could be successful. Such services are also compensable so long as, at the outset, it was not clear that success was remote.

*See also In re Kohl*, 95 F. 3d 713, 714 (8th Cir. 1996)(fees may be denied when counsel should have realized that reorganization was not feasible); *In re Crown Oil, Inc.*, 257 B.R. 531, 542 (Bankr. D. Mont. 2000 (counsel worsened creditors' position by attempting to reorganize debtor when reorganization was clearly not feasible); *In re Central Florida Metal Fabrication, Inc.*, 207 B.R. 742, 751 (Bankr. N.D.Fla. 1997)("If attorneys are not guarantors of the results in bankruptcy cases, they may not remain ostrich like and ignore the reality of a case crumbling about them.")(citations omitted).

There is ample precedent for denying all compensation to an attorney for failure to provide value to the estate. In *In re Spicklemier*, 469 B.R. 903 (Bankr. D. Nev. 2012), for example, the court ordered pursuant to §329 that the debtor's attorney disgorge all monies paid by the debtor because "the work counsel performed for the Debtors in this case reflects a lack of competence and diligence that does not deserve to be compensated." *Id.* at 914. The attorney initially filed a case for which the debtors were ineligible. The case was ultimately dismissed. The attorney then filed a motion for reconsideration, but failed to appear at the hearing. He also filed pleadings without citing any legal authority, and appeared at hearings unprepared. The court found that the reasonable value of his services was zero. *See also In re Sullivan's Jewelry, Inc.*, 226 B.R. 624 (8th Cir. BAP 1998)(legal fees reduced to zero because debtor's attorney rendered services that benefitted debtor's insiders instead of the estate).

The Trustee takes the position that the services provided by Needler were of no benefit to the estate and, therefore, Needler should be denied all fees requested and be ordered to disgorge all fees received. The Court agrees. The record indicates that Needler not only failed to provide a benefit, but took actions that were detrimental to the Debtor and the estate.

From the very beginning, Needler caused the Debtor to incur unnecessary legal fees. Needler filed the initial petition naming Miller Chrysler Dodge, Inc. as Debtor. No such corporate entity exists. The Trustee brought this error to Needler's attention, but he took no action to correct it. The Trustee was

4

forced to file a motion to dismiss the case for ineligibility, and Needler ultimately filed an Amended Petition to reflect the corrected corporate name.

As the Trustee points out, Needler was unable to obtain a final order authorizing the Debtor's use of cash collateral. According to Mrs. Miller, Needler never advised her what the Debtor needed to prove in order to use cash collateral, nor did he review the projections she prepared to determine if they were feasible or accurate. In denying the Debtor's Cash Collateral Motion, the Court all but handed Needler a list of the documentation necessary to meet the Debtor's burden of proof, namely, accurate and reliable sales and expense projections. Needler ignored the Court's directive, and instead, filed a motion to withdraw the reference to the District Court. It was swiftly denied.

Needler argues that withdrawal of the reference was appropriate because issues had been raised implicating the Dealer Day in Court Act,[2] that resolution of these issues would require the Court to give consideration to both Title 11 and laws regulating activities affecting interstate commerce and that withdrawal of the reference would be mandatory under these circumstances under 28 U.S.C. § 157(d). The Act provides that a dealer may sue to recover damages due to the failure of the manufacturer to act in good faith in terminating the dealer's franchise. The record does not support Needler's argument. Chrysler did not terminate or fail to renew the Debtor's franchise, so the Act does not apply. Secondly, no such claims were raised in any pleading then pending before the Court. Third, even had they been, withdrawal of reference would have been mandatory only as to such claims or proceedings, not the entire case or even the cash collateral motion. Finally, Needler assumes that even if such claims had been raised, they would have required the kind of material and substantial consideration of the Dealer Day in Court Act which would have made withdrawal of the reference mandatory, and this has not been demonstrated.

Needler also disputes the Trustee's charge that the withdrawal motion was purely "forum shopping." His denial belies the facts. In an email dated February 17, 2013, Needler relayed the following to the Debtors: "We got very rough treatment on February 12, 2013 from Judge Dow. He

---

[2] 15 U.S.C. §§1221, *et seq.*

denied all further Use of Cash Collateral. We decided, since he was so against us, that all we can do is to go to the U.S. District Court. We have filed a Motion to Withdraw the Reference and have gone directly to the U.S. District Court. … Hopefully we will have more luck here." Mr. Robert Ball, the Debtor's local counsel, testified that he told Needler that he did not think filing the motion to withdraw the reference was a good idea "because the Court didn't deny your application entirely, he denied it without prejudice to its refiling, so there's no need to go anywhere else." Tr. p. 174, line 25, p. 175, lines 1, 2.[3] Even the District Court recognized Needler's action as an exercise in futility: "In large measure, Debtor seeks withdrawal as part of an effort to persuade a different judge to do what the Bankruptcy Court has already declined to do – a classic case of forum shopping. … It is also worth noting that Debtor cites no authority suggesting withdrawal of the reference is justified in these circumstances…." Order Denying Emergency Motion to Withdraw Reference, Case No. 13-4041-CV-C-ODS, United States District Court for the Western District of Missouri, March 11, 2013. Filing the motion was simply a tactic employed by Needler to delay the bankruptcy proceeding and charge additional fees.

Needler was unable to propose a viable reorganization Plan and have it considered by the Court because the one he filed was not accompanied by the required disclosure statement. Again, the Trustee and the Court made Needler aware of this deficiency, but he took no action to remedy it. He was also unable to secure a floor plan financing arrangement for the Debtor so it could continue its operations, the initial goal of the bankruptcy filing. There is no evidence that Needler made any efforts to accomplish that on behalf of the Debtor. In terms of the alternate goal, to sell the dealership, Needler failed in that regard as well. He never filed another motion to employ a broker after he withdrew the one to employ Gutschow. Although the Debtors eventually did sell the dealership, the sale occurred over six months after the case was closed and Needler had nothing to do with it whatsoever.

The case was ultimately dismissed at the insistence of the Millers. Needler asserts that the case was dismissed because the Debtor's projections proved to be unreliable, and the Debtor had "some unknown pending transactions" which required the dismissal. The Court finds Needler's reasons

---

[3] All citations to a Transcript refer to the Hearing on the Motion held on July 22, 2014.

6

disingenuous in light of the evidence. Mrs. Miller testified that Needler's lack of professionalism and results drove the decision: "Our rationale was because he [Needler] failed to obtain the objective to which he said that he was going to do. We felt we couldn't trust him. We saw how he operated and he was very unorganized. Just in my opinion, he was incompetent, completely incompetent…. We had no faith in that he even knew what he was doing." Tr. p. 135, line 25, pp. 136, 1-11.

Even if this Court were to determine the appropriate compensation for Needler based on the specific entries on his fee application, a substantial portion of his fees would not be approved. Specifically, Needler would most certainly be denied fees and expenses attributed to his preparation of the motion to withdraw the reference, and his attempted collection of attorney's fees in state court. In addition, fees associated with actions he took after the case was dismissed would be stricken. In the unlikely event that, after deducting those amounts, the Court determined that Needler was entitled to any compensation, it would be limited to $17,000. As noted below, Needler failed to enter into a written fee agreement with the Debtor, and that was the amount he verbally represented would be sufficient for his retention. The very fact that Needler requested fees that are clearly not compensable is an indication of his bad faith.

While the evidence establishes the absence of an actual benefit to the Debtor's estate resulting from Needler's services, the critical question is whether those services were *reasonably likely* to benefit the estate. That is, did Needler recognize, or should Needler have recognized from the outset or even when the case was pending that little or no hope of a Chapter 11 reorganization existed? The answer is a resounding "yes."

Needler admitted that he was well aware of the Debtor's operational struggles and low inventory, as well as its inability to obtain new financing to satisfy the substantial debt owed to Ally. Gutschow stated in his Declaration in support of the Debtor's motion to employ him (before it was withdrawn) that he had pursued the financing option since mid-December 2012 and did not believe that he could obtain a new floor line for the Debtor given the current economic conditions. Needler was also aware that Gutschow's employment as a broker would be problematic, telling Mr. Miller that his connection with

7

Gutschow "might not look good." In addition, he knew that pursuing a withdrawal of the reference with respect to securing the use of cash collateral was risky.

The record reflects that a minimum amount of effort and investigation and awareness on Needler's part would have confirmed that reorganization was not a viable option for the Debtor. After considering the evidence presented at the hearing on the Cash Collateral Motion, the Court spelled it out for Needler:

> [F]irst of all, with respect to the sale of the dealership itself…the debtor has been trying to sell this for 11 months. There is no sale pending. There is no broker employed. … And there are substantial questions about the projections of income and expenses. … [I]n 30 days, approximately, the debtor has sold one vehicle, perhaps two vehicles. This debtor is just not a viable entity. … The debtor has no mechanism for financing new cars. … [A]mounts were being paid without authorization to use Ally's cash collateral to pay pre-petition debts, which the Court had not authorized. And I'm troubled by that. …[T]here's no motion pending before me at present to either dismiss or convert the case…So the Court does nothing more than [deny the Motion to Use Cash Collateral as presented].

Several months and many thousands of dollars later, Needler was still "working the Chapter 11 case" despite the Court's assessment that the Debtor was not a viable entity.

Mr. Needler argued at the hearing on this Motion that his fees were justified because the bankruptcy filing succeeded in protecting the Debtor's assets. There was no evidence, however, that Chrysler intended to cancel the franchise or that the franchise was otherwise in imminent danger. Furthermore, applying Needler's logic would lead to absurd results. If filing a bankruptcy petition, thereby triggering the automatic stay, was all it took to justify the payment of attorney's fees, then even an attorney who filed a petition in bad faith would be entitled to compensation.

In short, the Court finds that Needler not only failed to provide any actual value to the Debtor's estate, but that his services were not reasonably likely to do so. It is apparent that his only success was stringing along a case that should never have been filed in the first place. For these reasons, this Court denies Needler's request for compensation.

    B.    Non-Disclosure

The Trustee asserts that Needler's fee request should be denied because his Rule 2016 Disclosure and application for employment were willfully misleading in that they suggested that the Retainer was paid by the Debtor. In fact, it was paid by the Millers' daughter, an equity holder of the Debtor. Needler contends that "there was no secret" as to the source of his Retainer because he disclosed it in answer to Question No. 9 in the Debtor's Statement of Affairs ("SOFA"). The Trustee also argues that Needler was obligated to disclose that Gutschow was a client of his in a pending bankruptcy case, and that their relationship presented a conflict of interest. Needler countered that he did, in fact, disclose the nature of their relationship, and that it posed no conflict of interest. The Court finds Needler's disclosures problematic in several respects.

Section 329 requires the attorney to "file with the court a statement of the compensation paid or agreed to be paid, … and the source of such compensation." Likewise, Rule 2016(a) requires the attorney to file an application that includes "a statement as to what payments have theretofore been made or promised…, [and] the source of the compensation so paid or promised."

The disclosure requirements of §329 are mandatory, not permissive. *In re Cook*, 223 B.R. 782, 790 (10th Cir. BAP 1998)(citations omitted). The purpose of the disclosure is to allow any party in interest to make an independent judgment about the effect on the estate of any given payment. *In re Rio Valley Motors Company, LLC*, 2007 WL 2492685, *2 (Bankr. D.N.M. 2007). When a professional fails to file a sufficiently detailed disclosure, even if the failure is merely negligent or inadvertent, the court and parties in interest are not provided the information they need to judge whether the Code's standards are being met. *In re Smitty's Truck Stop, Inc.,* 210 B.R. 844, 849 (10th Cir. BAP 1997).

Regarding the source of the Retainer, the Court rejects Needler's position that the response in the SOFA was sufficient to comply with Bankruptcy Rules 2014 and 2016. In the first place, the "disclosure" was made in the wrong document. The SOFA is not Needler's disclosure, but rather the Debtor's, a snapshot of the Debtor's financial position. Needler should have disclosed the source of the payment he received in his own Disclosure of Compensation. That is precisely its purpose. Moreover, the SOFA was filed two weeks after Needler filed his Rule 2016 Disclosure and therefore, the Court considered

9

Needler's employment application without complete and accurate information. As the court stated in *Smitty's Truck Stop, Inc.*, 210 B.R. at 849, "It is not the Court's job to search through the record to find all relevant facts relating to an attorney's employment. It is counsel's [or applicant's] duty to provide the court with the information necessary to determine whether to appoint counsel."

Secondly, Needler's Disclosure simply states that he was "paid the total sum of $8,000.00 which included the filing fee of $1,213.00 and a Pro Hac Vice Fee of $100.00 along with a retainer of $6,687.00. The balance of $13,313 which is unpaid remains due on the retainer of $20,000.00." The source of the payment is conspicuously absent. The SOFA simply states that the payment was "[f]rom a 3rd Party Not a Creditor." It is apparent from the record and from other bankruptcy cases in which Needler served as Debtor's counsel that advising clients to have a third party pay the retainer was his *modus operandi*. In an e-mail to Mrs. Miller, Needler wrote: "Please expedite wire transfer to BB&T of $17,000 advanced for retainer and costs as soon as possible. This money should be from 3rd parties, NOT CREDITORS OF THE BUSINESS." Needler is all too familiar with this wording and the ramifications of substituting it for the true source. He used virtually identical language in at least one other case of which this Court is aware, and was admonished by the court then: "This is not sufficient. A 'person not a Creditor' is too vague a description to allow a party in interest to make at least an initial determination about the identity of the payor or the relationship of the payor to the debtor, the estate or the professional." *Rio Valley Motors Company,* 2007 WL 2492685, at *2. As a result, Needler's employment was not approved.

Finally, the importance of naming the source of the Retainer is underscored by the fact that the Miller's daughter is part owner of the Debtor. Her equity interest in the Debtor makes her an interested party. Since it is conceivable that she could have asserted a claim against the Debtor, a potential conflict of interest exists.

Turning to Needler's connection to Gutschow, the Court acknowledges that Needler disclosed their relationship, but once again, finds the location and substance of that disclosure troubling. Needler states in his Sworn Declaration in support of the Debtor's Application to Employ Attorney that "he confirmed a Chapter 11 in Nebraska …on 2/15/2011 for one Chad Gutschow, who was then employed by

10

TGAG L.L.C. and who the Applicant will be proposing as an individual Consultant to sell the Franchise and assets under this Debtor's Plan…." He neglected to add that the case was still pending. There is no mention of it in the motion prepared by Needler to approve Gutschow as the Debtor's exclusive broker, nor in Gutschow's Declaration in support of that motion. In fact, Gutshow affirmatively states that he has "no 'adverse interest' which would prevent his employment and that he and CLG Automotive are entirely 'disinterested persons' as these terms from the Bankruptcy Code have been explained to this Declarant…." In the interest of full disclosure, Needler should have described their connection in the Debtor's motion to approve Gutshow and instructed Gutschow to do the same in his Declaration.[4]

A bankruptcy court is well within its discretion to deny an attorney all fees and expenses, including prepetition fees, for failing to meet the disclosure requirements set forth in §329 of the Code and Bankruptcy Rules 2014 and 2016, and there is an abundance of cases to demonstrate that. In *In re Park-Helena Corp.*, 63 F. 3d 877 (9th Cir. 1995), for example, the disclosures filed by the debtor's attorneys stated that they received a retainer "paid by the Debtor" when in reality the payment came from the personal checking account of the debtor's president. That fact was only revealed after the debtor's major creditor objected to the attorneys' fee request. Moreover, the attorneys failed to disclose that the president was a party in interest because he held an equity interest in the debtor and his payment was credited against his indebtedness to the debtor. The bankruptcy court found that the attorneys had violated the disclosure rules on two counts – by failing to disclose the source of the retainer, and that the president paid it out of his personal account. The court denied their request for fees and the district court affirmed. On appeal, the attorneys argued that the distinction between the president and the debtor was one of form over substance. The Ninth Circuit rejected that argument and affirmed the order of the bankruptcy court. *See also Jacques H. Geisenberger, Jr., P.C. v. DeAngelis*, 2011 WL 4458779 (M.D.

---

[4] While the Court agrees with the Trustee that Needler's "disclosure" of his connection to Gutschow was inadequate, the point is moot because Needler eventually withdrew his motion to employ Gutschow. The Trustee also spent a considerable time arguing at the hearing on the Motion that Gutschow's continued efforts to sell the Debtor's dealership after the withdrawal were improper. The Court disagrees. The Millers testified that their expectation was always that Gutschow would be paid a commission from the purchaser, not the estate. Further testimony confirmed that this payment arrangement was standard in the industry.

Pa. Sept. 23, 2011)(affirming bankruptcy court's decision ordering full disgorgement of prepetition fees for violation of disclosure requirements); *In re Chatkhan*, 496 B.R. 687 (Bankr. E.D.N.Y. 2012)(law firm's failure to disclose prepetition retainer or the date it was drawn down in payment warranted denial of all compensation); *In re Bartmann*, 320 B.R. 725 (Bankr. N.D. Okla. 2004)(attorney's disregard for disclosure requirements and lack of candor justified order requiring him to disgorge undisclosed compensation).

Needler challenges the Court's authority to order him to disgorge a retainer paid by a third party. It is well-settled, however, that a bankruptcy court may order the disgorgement to the estate of attorney's fees paid by a third party when is established that the payments constituted distributions that would have otherwise accrued to the debtor's estate. *In re W.T. Mayfield Sons Trucking Co., Inc.,* 225 B.R. 818, 827 (Bankr. N.D.Ga. 1998). The general rule is that, notwithstanding an ultimate third party owner of the funds, a retainer is held in trust for the debtor's estate to the extent it is utilized to compensate the estate's attorney. The prevailing view was articulated by the court in *In re Stevenson*, 2011 WL 2413172, *5 (Bankr. D. Ariz. June 9, 2011):

> [N]otwithstanding an ultimate third party owner of the funds, the retainer is held in trust for Debtor's estate to the extent it is utilized to compensate the estate's attorney. The estate, therefore, has an equitable interest in the trust funds. Property of the estate includes any legal or equitable interests of the debtor in property as of the commencement of the case.

For all of the reasons set forth above, the Court concludes that Needler failed to satisfy the disclosure requirements of the Bankruptcy Code and Bankruptcy Rules. This constitutes additional grounds for denying his requested fees and ordering him to disgorge the Retainer.

III.   IMPOSITION OF SANCTIONS

Section 105 gives bankruptcy courts broad power to implement the provision of the Bankruptcy Code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel. *See In re Clink* (*Gargula v. Bisges*), 2013 WL 1741945, *5 (Bankr. W.D. Mo. April 23, 2013), citing *In re Triepke*, 2012 WL 12299524 (Bankr. W.D. Mo. April 12, 2012). Bankruptcy courts also possess

inherent authority to regulate the practice of attorneys who appear before them and to sanction abusive litigation practices. *Law v. Siegel*, 2014 WL 813702, *5 (Mar. 4, 2014)(citations omitted); *In re Nguyen*, 447 B.R. 268, 280 (9th Cir. BAP 2011)(en banc)(citations omitted). "This power is broad enough in scope, and includes the power to impose monetary sanctions, as well as to 'control admission to its bar and to discipline attorneys who appear before it." *In re Burnett*, 450 B.R. 116, 132 (Bankr. E.D.Ark. 2011)(citations omitted). *See also In re Steward*, Case No. 11-46399-705 (Bankr. E.D.Mo. 2011), Memorandum Opinion and Order, June 10, 2014 (attorneys who filed a petition knowing it contained false representations and who used non-attorney staff to provide legal advice were suspended from practicing before the U.S. Bankruptcy Court for a one-year period).

Bankruptcy Rule 9011 gives bankruptcy courts additional authority to impose an appropriate sanction for attorney misconduct. The sanction must be limited to what is sufficient to deter repetition of conduct in violation of the Rule, or comparable conduct by others similarly situated. Fed. R. Bankr. P. 9011(c)(2). *See, e.g., In re Spickelmier*, 469 B.R. 903 (Bankr. D. Nev. 2012)(to deter the filing of frivolous and redundant pleadings in the future, and protect unsuspecting clients, court ordered attorney to disgorge all fees and complete CLE courses).

The record in this case is replete with examples of Needler's violations of not only the Bankruptcy Code, Bankruptcy Rules, and Local Rules, but basic tenets of legal representation as well. Needler routinely failed to inform his client about pleadings he filed and responses thereto. At the hearing on the Motion, the Millers testified to that effect. For example, Needler never advised them that he had filed an application to employ Gutschow or that the Trustee had filed an objection to it. Needler attempted to counter that by establishing that his office had, in fact, e-mailed or faxed pleadings to the Debtor. Needler misses the point. Service of a pleading *after* it has been filed is not tantamount to discussing the pleading *beforehand*, soliciting a client's input, and obtaining authorization to file it.

It is evident that Needler failed to perform a reasonable investigation into the facts contained in Debtor's petition since it named a non-existent debtor. Because his signature constituted a certification that he had no knowledge after an inquiry that the information was incorrect, Needler violated his duty

under §707(b)(4). He also filed other documents and pleadings that are indicative of his lack of diligence: the Plan was filed without a disclosure statement, the financial information supporting the use of cash collateral was unreliable, and the motion to withdraw of the reference was unsubstantiated.

Needler engaged in forum-shopping. As noted previously, he told the Debtor's representatives that he filed the motion to withdraw the reference because it was "all we can do," even though this Court denied the Cash Collateral Motion without prejudice to refile it. The District Court concluded that Needler had no legal basis to withdraw the reference.

Needler failed to enter into a written fee arrangement with the Debtor, and misled the Millers as to the amount that they were expected to pay. At the hearing on the Motion, Mrs. Miller testified as follows:

> Q: And what was your understanding, based on your conversations with Mr. Needler concerning the compensation that was to be paid to him?
> A: That he needed $8,000 up front and the full retainer was 17 total.
>
> Q: Did you understand or have any discussions with Mr. Needler about him billing on an hourly basis?
> A: No.
>
> Q: To the best of your knowledge, did you or anyone at Miller Automotive sign a fee or an engagement letter with Mr. Needler concerning his fees?
> A: No.

Tr. p. 106, lines 6-17.

Needler instructed his client to pay the Retainer from funds provided by a third party, and then failed to disclose the true identity of the payor, a co-owner of the Debtor. He acted deliberately in total disregard of a prior court's admonition that designating the payor as a "Third Party" was insufficient. Furthermore, Mrs. Miller testified that the payor (the Millers' daughter) obtained the funds for the Retainer from the Debtor and, more importantly, that Needler was aware of that. Tr. p. 124, lines 11-25.

Needler failed to disclose the conflict of interest that existed because of his attorney/client relationship with Gutschow. Because the bankruptcy case in which Needler represented a company affiliated with Gutschow was still pending when Needler sought to employ him as the Debtor's broker, it was incumbent upon Needler to make an accurate and proper disclosure.

14

Needler failed to comply with the Local Rules regarding electronic filing. Specifically, he failed to secure the original signature of the Debtor's representative on documents filed in the case as required by W.D. Mo. Bankr. Ct. ECF Administrative Procedures, Section II.D. The record reflects that Needler opted instead to procure the signatures by facsimile, and that most often, he sent only the signature page to the Millers rather than the entire document. According to the Trustee, Needler has never been able to produce the original of his application for employment, yet another violation of this Local Rule.

Needler failed to communicate effectively with the Debtor, both in terms of adequately explaining the bankruptcy process and the attendant risks, and in terms of professional behavior. Mrs. Miller testified that the first time she and her husband met Needler in person was at the initial hearing on cash collateral. She also recounted that Needler had not explained the mechanics of the use of cash collateral or the concept of adequate protection. In addition, after the Cash Collateral Motion was denied, he never discussed with her the potential of filing an amended motion with different projections. Rather, he "felt there was a way to go around it and go to a higher court…." Tr. p. 118, lines 24, 25.

Needler's interactions with the Debtor's representatives were deplorable. In Mr. Miller's words: "And he would call the dealership and just yell at everyone if we weren't there to take the call immediately. … [W]e were bullied the whole time. Finally, it got to where my wife wouldn't even talk to him because he just yelled and screamed. And then finally he yelled and screamed at me and I just finally said this is enough." Tr. p. 55, lines 13-18. Mrs. Miller echoed that: "He would scream. He was a bully. … [H]onestly, I was scared to death every time the phone would ring." Tr. p. 136, lines 7-13.

 If this were an isolated case, the infractions cited above would be more than sufficient to justify the imposition of sanctions. This is not an isolated case, however. A search of published opinions involving Needler as *pro hac vice* counsel to Chapter 11 debtors revealed a pattern of professional misconduct, procedural non-compliance, and ethical violations. The following is merely a sampling. It is noteworthy that these cases span a wide chronological and geographical range.

*In re TCI Limited*, 769 F. 2d 441 (7th Cir. 1985) – Needler's firm filed unjustified and unsubstantiated pleadings, even after the court offered the firm an opportunity to supplement the record.

15

The district court awarded costs and fees of litigation to the defendants and against Needler. The Seventh Circuit affirmed.

*In re Grimes*, 115 B.R 639 (Bankr. D.S.D. 1990) – Needler's fees were found to be excessive. "The [c]ourt's blind approval of this inflated amount and expenses would be tantamount in condoning pillage and plunder of the debtors' estate." Needler was ordered to disgorge approximately one-third of his retainer. Note that the retainer was paid by the debtors' relative with funds provided by the debtors.

*In re Grantham Brothers*, 922 F.2d 1438 (9th Cir. 1991) – The bankruptcy court imposed sanctions against Needler for Bankruptcy Rule 9011 violations and the district court affirmed. The Ninth Circuit affirmed based on an improper and frivolous filing that was intended to delay the bankruptcy proceeding and increase the cost of litigation.

*In re Enrose Farms, Inc.*, 1999 WL 33486711 (Bankr. D. Idaho March 9, 1999) – The bankruptcy court imposed sanctions against Needler for failing to adequately investigate facts prior to commencing suit, to substantiate his claims, and to communicate with opposing counsel. Needler was found "guilty of unprofessional conduct in failing to do even a minimum of inquiry into the merits of their claims…." He also "admitted no wrong, and attempted to blame others for the outcome of the case," and used stalling tactics. Needler and his local co-counsel were sanctioned the total amount of $20,000.

*In re Big Mac Marine, Inc.*, 326 B.R. 150 (8th Cir. BAP 2005) – Needler was disqualified by the bankruptcy court from serving as debtor's attorney because of an actual conflict of interest and denied fees incurred prior to the disqualification order. The Eighth Circuit affirmed.

*In re Rio Valley Motors Company, LLC*, 2007 WL 2492685 (Bankr. D.N.M. Aug. 29, 2007) – Needler identified the payor of his retainer as "Third Party" and "a person not a Creditor." The court ruled that the disclosure was insufficient, and denied Needler's employment.

*In re Incredible Auto Sales LLC*, 2007 WL 3226835 (Bankr. D. Mont. Oct. 30, 2007) – Needler failed to timely file an application to employ a professional, used unreliable valuations to secure the use of cash collateral, filed "a wholly inadequate disclosure statement" and "disgraceful pleadings," and "never took the time to perform even the most basic professional obligations." Needler's "disregard for

16

the [c]ourt's Local Rules and procedure was evidenced throughout this case…." Needler admitted that he knew, at the inception of this case, that it would end up in Chapter 7. The court ordered the disgorgement of a portion of his fees and denied the interim fee requested.

*In re TGAG LLC*, Case No. 12-82354-TLS, U.S. Bankruptcy Court for the District of Nebraska – The trustee and the debtor objected to Needler's interim fee application on the grounds that the fees requested were unreasonable and excessive. The bankruptcy court reduced the fee amount to half of the amount Needler requested.[5]

Only six months ago, Needler appeared before another Bankruptcy Judge in this District. In *In re Metten Management Innovation, LLC*, Case No. 13-50244, Needler failed to disclose the source of his retainer, filed documents and pleadings containing errors and inconsistencies, failed to comply with Local Rules regarding required verifications, used questionable practices to obtain his client's signature on pleadings, filed a plan that was "patently unconfirmable" and a disclosure statement that was deficient, was unavailable for several hearings, willfully failed to amend certain pleadings despite agreeing to do so in open court, displayed a "cavalier" attitude, and filed cases that "should never have been filed." Judge Cynthia Norton denied his application for employment nunc pro tunc, denied his application for compensation, and ordered Needler to disgorge the sum of $7,574 to the trustee.

As detailed throughout this Opinion, good cause has been shown to suspend Needler from the privilege of practicing law. He has shown little respect for this Court or his clients. He has flagrantly disregarded his duties as an officer of the Court and has intentionally violated the requirements imposed by the Bankruptcy Code and Rules. Rulings from numerous courts over the years have not served to deter Needler's behavior. Accordingly, the Court orders that Needler be suspended from practicing before the United States Bankruptcy Court for the Western District of Missouri, effective immediately.

IV.    CONCLUSION

The record in this case demonstrates that Needler did not meet his burden of proving that the compensation he requested was reasonable. To the contrary, the evidence showed that his services

---

[5] This is the case in which Gutschow was involved.

17

provided no value to the Debtor's estate and that Needler knew, or should have known, that they were not reasonably likely to do so. To borrow the words of another court, "Were there ever a time to use 'fail' as the contemporary vernacular permits, it is now, and in reference to this deplorable display of legal representation: it was an epic fail."[6] For those reasons, the Court denies Needler's request for compensation set forth in his Fee Application.

In addition, the Court grants the Trustee's Motion for the disgorgement of fees and imposition of sanctions. Needler failed to properly disclose and identify the source of his Retainer as required by the Bankruptcy Code and Rules. As a result, the Court orders that Needler disgorge the amount of $6,687 (the Retainer less fees) to the Trustee.

Finally, based on the abundance of evidence before it, the Court imposes the sanction of suspension pursuant to §105 and Bankruptcy Rule 9011. The Court orders that, effective immediately, Needler is suspended indefinitely from the privilege to practice before the United States Bankruptcy Court for the Western District of Missouri. The purpose of this non-monetary sanction is to deter future misconduct on the part of Needler and others similarly situated.

Date: October 24, 2014
/s/Dennis R. Dow
THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE

---

[6] *In re Spickelmier*, 469 B.R. at 906.